**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | No. 3:17-cr-00124 |
| ) | **Chief Judge Crenshaw** |
| **[1] MARCUS TERMAINE DARDEN** ) | |
| **[2] MAURICE DUNCAN BURKS** ) | |
| **[3] BRANDON DURELL HARDISON** ) | |
| **[4] LAMAR ANDRE WARFIELD** ) | |
| **[5] DERRICK LAMAR KILGORE** ) | |
| **[6] ELANCE JUSTIN LUCAS** ) | |
| **[7] DECARLOS TITINGTON** ) | |
| **[8] LAWRENCE MITCHELL** ) | |
| **[9] LORENZO CORTEZ BROWN** ) | |
| **[10] XAVIER RAPHAEL JENKINS** ) | |
| **[11] REX ANDREW WHITLOCK** ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court in this forty-Count, eleven Defendant case charging a host of crimes against alleged members of the Gangster Disciples is the Government's Motion for Protective Order (Doc. No. 129). Also pending are a number of Motions to Extend the Deadline for Filing Pretrial Motions (Doc. Nos. 146, 147, 148, 172), and the Government's Motion to Exclude Speedy Trial Time, to Designate the Matter as Complex and to Issue a Scheduling Order or Set a Status Hearing (Doc. No. 181). The Court considers the Motions in turn.

**I. Government's Motion for a Protective Order**

The Government has proposed a Protective Order that reads:

Copies of discovery materials in this case shall not be provided to the defendants, or anyone associated with the defendants other than members of the defendants' legal defense team, to retain for themselves. Nothing in this Order, however, prevents

defense counsel from reviewing these materials with the defendants. (Id. at 12). Though the request is remarkable in its brevity, Defendants Xavier Jenkins, Brandon Hardison, Maurice Burks, and Marcus Darden have filed separate responses (Doc. Nos. 143, 145, 151, 160) in opposition. Defendants Decarlos Titington, Lawrence Mitchell, and Derrick Kilgore have moved to join (Doc. No. 144, 153, 180) in Defendant Jenkins' response. The Government has filed a Reply (Doc. No. 173).

So far as relevant, Rule 16 of the Federal Rules of Criminal Procedure provides that "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). "The use of the word 'may' in this rule highlights the court's discretion." United States v. Griffin, 2014 WL 1767201, at *1 (S.D. Miss. May 2, 2014) (citing In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 122 (2d Cir. 2008)).

"Although the Rule does not define 'good cause,' the Advisory Committee expressly sanctions the imposition of a protective order 'where there is reason to believe that a witness would be subject to physical . . . harm[.]'" United States v. Mitchell, 2016 WL 7076991, at *2 (D. Me. Dec. 5, 2016); see United States v. Fort, 472 F.3d 1106, 1131 (9th Cir. 2007) ("The Rules Advisory Committee specifically designed Rule 16(d)(1) to provide a mechanism to protect witness safety, and to grant considerable discretion to the district court in drafting orders under that rule."). "The Government, of course, has the burden of showing the requisite good cause." United States v. Yassine, 574 F. App'x 455, 461 (5th Cir. 2014) (citing United States v. Carriles, 654 F. Supp.2d 557, 565–66 (W.D. Tex. 2009)). "Defendants ha[ve] the burden of showing the protective order would cause prejudice." Id.; see United States v. Davis, 809 F.2d 1194, 1210 (6th Cir.1987) (rejecting defendant's argument that protective order was improper where he failed to show

2

prejudice).

Separate and apart from noting that one or more of the Defendants are charged with crimes ranging from possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g) to murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1), the Government presents five grounds that it claims establish good cause for the issuance of the protective order. Summarized, those grounds are:

> (1) "[O]ne of the tenets of the Gangster Disciples is 'silence and secrecy,' meaning that members . . . who discuss matters related to the Gangster Disciples with persons who are not members . . . are subject to retribution[.]"
>
> (2) A witness has testified that "defendant Marcus Darden, the lead defendant in this case and the highest-ranking Gangster Disciple in Middle Tennessee between at least 2013 and 2014, ordered a physical assault, which other Gangster Disciples carried out, against the witness for having spoken with or otherwise cooperated with authorities[.]"
>
> (3) Witnesses in this case have stated that those cooperating with law enforcement about Gangster Disciple activities are subject to retribution, and Gangster Disciples and their associates use social media to communicate about what happens to "snitches."
>
> (4) "[I]t appears" that Defendant Kilgore "has in fact disseminated discovery materials" because, during the search of his mother's residence, agents found "reports of investigation and witness statements related to defendant Brandon Hardison's 2013 federal felon-in-possession case in the Middle District of Tennessee, which were prepared by the ATF agent investigating that case and which were provided to Hardison in discovery."
>
> (5) Defendant Rex Whitlock used a smuggled cellphone to post "updates" on social media (including Facebook), solicited comments and friend requests from persons not in custody, and uploaded a video that appears to show him displaying and reviewing a copy of his plea agreement from his jail cell.

(Doc. No. 129 at 4-6).

In their responses, Defendants raise a number of objections. Most notably, they argue that there has been no clear showing that good cause exists, and that the proposed Protective Order is

3

overly broad in scope.

Both sides raise legitimate concerns. On the one hand, witness safety is paramount, and the Court cannot ignore threats to, or intimidation of, witnesses. United States v. Figueras, 2009 WL 1364640, at *1 (W.D.N.Y. May 14, 2009) (stating that protective orders help to ensure "strong public interest in encouraging the free flow of information to law enforcement officers"); United States v. Barbeito, 2009 WL 3645063, at *1 (S.D.W. Va. Oct. 30, 2009) ("It is appropriate . . . to employ Rule 16(d) protective orders to curtail the public dissemination of sensitive discovery materials that may endanger witnesses or informants."). On the other hand, an essential component to the Sixth Amendment right to counsel is that a defendant be allowed to assist and participate meaningfully in his own defense. See Faretta v. California, 422 U.S. 806, 819 (stating that the Sixth Amendment "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense"). The Government's proposed Order makes no effort to strike a balance between these competing concerns. See United States v. O'Keefe, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) ("Protective orders are expressly designed to assure that a defendant's right to a fair trial are not overridden by the confidentiality and privacy interests of others.").

The brevity of the requested Protective Order belies its breadth.[1] It would prohibit *any* of the Defendants from possessing *any* discovery in this case no matter how innocuous. This would include such mundane things as firearm reports, serology reports, or other scientific reports (if they

---

[1] The Government notes that it "has obtained orders similar to the order proposed in this case in other cases currently pending in the Middle District of Tennessee," citing, United States v. Green, No. 3:17-cr-80 (M.D. Tenn. May 24, 2017) and United States v. Lundy, No. 3:15-cr-146 (M.D. Tenn. June 8, 2016). However, the Motion for a Protective Order in Green indicated that counsel for defendant had no objection to the request. Likewise, in Lundy, the Motion was unopposed and, moreover, was limited to copies of audio recordings.

exist), all of which are unlikely to contain information that will lead to threats or intimidation of witnesses. However, in determining the appropriate level of protection, "it is important to ensure that a protective order 'is no broader than is necessary' to serve the intended purposes." United States v. Williams, 2015 WL 5923551, at *3 (D. Mass. Oct. 9, 2015) (quoting United States v. Smith, 985 F. Supp. 2d 506, 545 (S.D.N.Y. 2013)). Although, "[b]lanket protective orders 'expedite the flow of discovery' and avoid the time consuming, inefficient process of a document by document review," United States v. Bulger, 283 F.R.D. 46, 52 n.11 (D. Mass. 2012), "they can be overbroad and unnecessary," Williams, 2015 WL 5923551, at *3. That may well be the case here, particularly because the Government has indicated that discovery in this case "will be voluminous." (Doc. No. 129 at 3).

Many of the Defendants are housed in correctional facilities more than an hours drive from Nashville, yet, under the Government's proposal, counsel (or someone from his or her office) would have to drive to the jail and then sit with Defendant while each piece of discovery is reviewed. Not only would this entail countless hours, it would require coordination between counsel's schedule and the jail to accommodate what are likely to be lengthy visits. See O'Keefe, 2007 WL 1239204, at *2 (observing that "burdensomeness and logistical difficulty" are legitimate factors for courts to consider "in resolving discovery disputes").

While the Supreme Court has stated that a "trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect," Alderman v. United States, 394 U.S. 165, 185 (1969), "[p]rotective orders are the exception, not the rule, and appropriate reasons must be given for their entry." United States v. Stone, 2012 WL 137746, at *3 (E.D. Mich. Jan. 18, 2012); see

5

Carriles, 654 F. Supp. 2d at 565 (noting that a "motion for a protective order ordinarily contemplates a particular and specific demonstration of fact" and citing United States v. Garrett, 571 F.2d 1323, 1326 n.3 (1978) for the proposition that protective orders should not be granted on "a bare request from the government and without further inquiry"). Here, the Government has provided reasons, but those reasons are mostly conclusory and, with just a couple of exceptions, lacking in detail. See United States v. Jones, 2007 WL 4358227, at *1 (E.D. Tenn. Dec. 13, 2007) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing").

Most Defendants request an evidentiary hearing, with some suggesting that such a hearing is necessary to probe the basis for the Government's claims. For example, Defendant Hardison argues that the Government's generalized contentions should "not be taken at face value," and any proffered witnesses should "be subject to cross-examination." (Doc. No. 145 at 7).

An evidentiary hearing would be one way to explore the basis for the Government's assertions that witnesses might be intimidated or threatened, but Rule 16(d) provides an alternative approach: "[t]he court may permit a party to show good cause by a written statement that the court will inspect *ex parte*." Fed. R. Crim. P. 16(d)(1). This is based upon the Advisory Committee's belief that "[i]n some cases it would defeat the purpose of the protective order if the government were required to make its showing in open court[.]" Id. ADVISORY COMMITTEE NOTES to the 1966 Amendments; see United States v. Luchko, 2006 WL 3060985, at 5-6 (E.D. Pa. Oct. 27, 2006) (stating that while the government "bears the burden of demonstrating good cause," it "cannot be required to make particularized allegations in its pleadings because that would defeat the purpose

6

of the motion for a protective order").[2]

In accordance with Fed. R. Crim. P. 16(d), the Court will provide the Government with an opportunity to supplement the record by filing, under seal and *ex parte*, a more detailed explanation of the need for a protective order. Affording the Government this opportunity does not, however, entirely eliminate the Defendants' requests for a hearing.

In their briefs, Defendants offer a number of ways in which the Government's concerns can be addressed short of a total ban on Defendant's possessing discovery material. Some of the suggestions include (1) requiring the Government to provide redacted discovery; (2) requiring that discovery placed on encrypted thumb drives to be kept by jailers; (3) using software that restricts recipients from printing, sharing, or "text scraping"; and (4) limiting any protective order to only those documents or recordings that the Government contends identifies witnesses or informants, with the proviso that Defendants can move the court to review such designations.

The Government takes issue with all of these approaches. For example, it claims that redacting names or identifiers from documents does not otherwise prevent a defendant from identifying the witnesses and then intimidating those witness. Further, redacting certain material will render it "virtually useless to the defense," and, "as a technical matter," it would be "nearly impossible" to redact informant statements from such things as recordings. (Doc. No. 173 at 7). As for encrypted thumb drives, the Government states that it "can neither confirm nor disconfirm that jail personnel at all of the[] facilities [where Defendants are housed] in fact maintain thumb drives containing discovery materials or do not permit such drives in the defendants' cells." (Id. at 10).

---

[2] Under this approach, "'[i]f the court grants relief based on such showing, the government's statement is to be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal by the defendant.'" Id. (citing ADVISORY COMMITTEE NOTES).

The parties' respective positions regarding alternatives to an outright ban are long on theory but short on facts. The feasibility of Defendants' suggestions is something the Court will consider at a hearing.

Prior to ending the discussion on the Government's Motion for a Protective Order, the Court finds it appropriate to address two more issues. The first relates to Defendant Jenkins' contention that the Government filed its motion without complying with the local rules.

This Court's Local Criminal Rules provide that "no discovery motion . . . shall be filed in any criminal case unless accompanied by a written statement of counsel certifying that counsel for the moving party. . . has conferred with opposing counsel . . . in an effort in good faith to resolve by agreement the subject matter of the motion, but has not been able to do so." L. Cr. R. 12.01(a). Here, in the penultimate paragraph of its Motion, the Government states that it "has consulted with counsel for defendants" and that it "anticipates that counsel for th[e] defendant will file responses to the government's motion setting forth their positions in writing." (Doc. No. 129 at 9-10). This statement hardly suggests compliance with Rule 12.01(a), nor is Defendant Jenkins argument on this issue "specious," as the Government contends.[3] Nevertheless, given that the parties appear to be

---

[3] The Government states in its reply:

> This argument is specious. Before the government filed its motion for a protective order, it engaged, over the course of more than a week, in an email discussion and in some face-to-face discussions with defense counsel regarding the protective order issue. The government provided counsel with a draft of the government's motion for a protective order, as well as a draft protective order, and solicited counsel's views and positions on the government's motion. Ultimately, however, the government concluded that it could not reach an agreement with counsel dissemination of discovery in this case, given the unwillingness of certain defendants to accede to the government's request that copies of discovery not be left with the defendants themselves.

(Doc. No. 173 at 11-12).

well-entrenched in their respective positions, and, in an effort to move this case forward, the Court will not require the Government to engage in what will likely be an exercise in futility by having it comply with the spirit if not the letter of L.R. Crim. P. 12.01(a).

The second issue relates to Defendants querying the efficacy of a protective order that prohibits them from possessing documents when they are going to learn the information anyway. For example, Defendant Jenkins points out that the "proffered protective order does not restrict Defendants from taking notes while reviewing discovery with their counsel or from even memorizing discovery," and "recognized faces and voices . . . can be memorized." (Doc. No. 143 at 2). Thus, "restricting the retention of discovery will not address the government's concern of retribution against witnesses." (Id.). Similar arguments, however, have been repeatedly rejected by the courts. See United States v. Dent, 2017 WL 1025162, at 4-5 (C.D. Cal. Mar. 15, 2017) (collecting cases and stating " it is not simply the identity of the cooperating witnesses, but the documents that corroborate their cooperation, known in the streets as 'paperwork,' which concern the government [because] if 'paperwork' is made available to Defendants, it can be given to non-incarcerated . . . gang members to justify acts of intimidation or harm against the cooperating witnesses or their families"); Mitchell, 2016 WL 7076991, at *3 ("[U]nlike word of mouth, written informants' statements are concrete corroborative evidence of their cooperation with law enforcement."); United States v. Palmer, 2011 WL 672412, at *1 (S.D.N.Y.) (citation omitted) (observing that materials revealing the identities of are "often copied, 'passed around prisons throughout the country,' and used to retaliate against cooperators witnesses").

## II. Motions to Extend Pretrial Motions Deadline

This Court's rule relating to motions practice in criminal cases provides that "all pre-trial

9

motions, except motions regarding discovery under Fed. R. Crim. P. 16, or Local Criminal Rule 16.01(a)(2) shall be filed within twenty-eight (28) days of arraignment, absent leave of Court." L. R. Crim. P. 12.01(b). For most Defendants, that deadline has passed, even though they have yet to receive the "voluminous discovery" from the Government. Most Defendant therefore request that they be given sixty days from the date the Court rules on the Government's Motion for a Protective Order within which to file pretrial motions.

It is clear to the Court that the deadlines for the filing of pretrial motions needs to be extended and Defendants' motions will be granted. So as to avoid revisiting the issue at a later date, however, the length of that extension will be determined at the hearing to be conducted on the Government's Motion for a Protective Order.

### III. Motion to Exclude Speedy Trial Time and to Declare Case Complex

Finally, the Government has filed a Motion to Exclude Speedy Trial Time, to Designate the Matter as Complex and to Issue a Scheduling Order or Set a Status Hearing (Doc. No. 181). The basis for the exclusion of time from the Speedy Trial Act calculations is two-fold. First, Defendants Lamar Warfield and Elance Lucas remain at large, and 18 U.S.C. § 3161(h)(3)(A) excludes "[a]ny period of delay resulting from the absence or unavailability of the defendant." Second, the "ends of justice" exclusion from the Speedy Trial Act includes cases that are "so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by [the Act]." 18 U.S.C. § 3161(h)(7)(B)(ii).

Leaving aside that two Defendants have yet to be arrested, this case is indeed complex given the scope of the Indictment, the number of Defendants and charges, and the length of the alleged

conspiracy. And, even if it were not, forcing trial within the 70-day time limit of the Speedy Trial Act would likely "deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." 18 U.S.C. § 3161(h)(7)(B)(ii). The exclusion of time is unquestionably necessary and appropriate and the Court will discuss this issue as well at the hearing to be set on the Government's Motion for a Protective Order.

### IV. Conclusion

On the basis of the foregoing, the Court rules as follows:

(1) A ruling on the Government's Motion for Protective Order (Doc. No. 129) is hereby **DEFERRED**. Within ten (10) days of the date of entry of this Memorandum Opinion and Order, the Government shall **FILE** *ex parte* and under seal a further and more detailed explanation of the need for a Protective Order in this case.

(2) The Motions to Adopt Responses to Motion for Protective Order (Doc. Nos. 144, 153, 180) are **GRANTED**.

(3) Defendants' Motions to Extend the Deadline for Filing Pretrial Motions (Doc. Nos. 146, 147, 148, 172) are **GRANTED**.

(4) On **September 21, 2017,** at 9:00 a.m., the Court will hold a **HEARING** to determine possible alternatives to a Protective Order that precludes Defendants from retaining any of the discovery materials in this case. Also at that hearing, the Court will hear from the parties regarding (2) workable deadlines for the filing of pretrial motions, (2) the Government's Motion Motion to Exclude Speedy Trial Time and to Designate the Matter as Complex (Doc. No. 181), and (3) the setting of deadlines and a practicable trial date.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE