IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| | ) | No. | 3:17-cr-00124-2 |
| v. | ) | | |
| | ) | | Chief Judge Crenshaw |
| | ) | | |
| MAURICE DUNCAN BURKS | ) | | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION FOR EXCULPATORY EVIDENCE (Doc. 372)

The United States of America, by and through its attorney, the United States Attorney for the Middle District of Tennessee, and the Acting Chief of the Organized Crime and Gang Section, Criminal Division, United States Department of Justice, respectfully files this response to defendant Maurice Duncan Burks's Motion for Exculpatory Evidence (Doc. 372).

I.      Procedural Background

On June 29, 2017, a federal grand jury in the Middle District of Tennessee indicted the defendant on one count of Conspiracy to Commit Racketeering Activity, in violation of Title 18, United States Code, Section 1962(d); Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine, 280 Grams or More of Crack Cocaine, Oxycodone, Methadone, Hydrocodone, and Marijuana, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b); Unlawful Possession of Ammunition by a Convicted Felon, in Violation of Title 18, United States Code, Section 922(g)(1); Murder in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a)(1); and Using, Carrying, or Possessing a Firearm During and in Relation to a Crime of Violence, in violation of Title 18, United States Code, Section 924(c)(1)(A). The grand jury has since returned two superseding indictments in this case, although the defendant has not been charged with any additional offenses.

1

On January 26, 2018, the parties appeared before this Court for a status conference. At that status conference, the Court set pretrial motions deadlines, and scheduled the case for trial on March 1, 2019.

II.    Argument

In an expansive, 22-page filing, the defendant has asked this Court to order the government to provide him with a wide range of material he characterizes as discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny. The defendant has not specified when the government should be required to produce these materials to the defense, other than, it seems, sufficiently in advance of trial for the defense to make use of them effectively at trial. Indeed, the defendant's motion appears not to be a request that the Court order some action now, but merely to be a written notice outlining what the defendant believes the government's obligations are under *Brady* and its progeny vis-à-vis any cooperating witnesses or defendants that may have some connection to this case. The government responds to the defendant's requests below.

Before responding to the defendant's discovery requests, however, the government seeks to address the defendant's misleading and pejorative description of this case as a "snitch case," *see* Doc. 372 at 2. For the reasons below, that description mischaracterizes the government's evidence. That description also serves, unhelpfully, to reinforce a dangerous stereotype that can endanger witnesses and cooperating defendants and can undercut the ability of law enforcement to investigate violent crime.

A.    Defendant Burks Mischaracterizes the Government's Evidence

The government, as noted, objects to the defendant's characterization of this case as a "snitch case." This prosecution is the result of a multi-year investigation by Special Agents with the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and state and local

2

law enforcement agencies into the criminal activity of the Gangster Disciples ("GDs"), a violent, national street gang operating in the Middle District of Tennessee and elsewhere. During the course of this investigation, the government has interviewed and/or secured the statements and grand jury testimony of numerous witnesses. The government has obtained documentary evidence of the Gangster Disciples' criminal enterprise and activities, including foundational GD documents describing basic GD tenets and identifying the duties of GDs with positions of authority in the gang, lists of phone numbers of GD members and associates, dues rosters reflecting the payment of dues and attendance at gang meetings, "write-ups" of violations of gang rules, and jail records reflecting, among other things, deposits to the commissary accounts of incarcerated gang members by other gang members or associates. The government conducted controlled buys of narcotics from targets of the investigation, including indicted defendants. The government recovered firearms, narcotics, ballistics, and other evidence after conducting traffic stops, executing residence search warrants, and canvassing the scene of violent crimes, including shootings and murders. The government also took photographs of Gangster Disciples members arriving to several gang meetings and, in one instance, obtained an undercover video of a Gangster Disciples meeting. And the government recovered numerous gang-related posts from the social media accounts of members of the charged enterprise, among others.

The government, during this investigation, may also have enlisted the cooperation of current and former members and associates of the Gangster Disciples. Indeed, in prosecutions such as this and others involving organized criminal enterprises, it is often necessary to secure the testimony of cooperating witnesses and defendants in order to provide evidence of the inner workings of the criminal enterprise and to explain to a factfinder at trial the significance of documentary and photographic evidence. To the extent that the government intends to rely on such

persons—and the government is not confirming at this time whether the government does intend to rely upon cooperating witnesses or defendants in this case—the government has ensured that such persons have taken formal responsibility for their own criminal conduct, where permissible under the law. And, as in any other case, the government has sought to corroborate information provided, where possible. By cavalierly and dismissively labeling cooperating witnesses and defendants as "snitches," the defendant reinforces the dangerous view that cooperating with law enforcement, or even speaking with members of law enforcement, is wrong and should be discouraged and punished, sometimes through physical assault or even murder. Promulgation of that view poses serious safety risks to those labeled as "snitches" and their families, and thwarts even routine efforts by law enforcement to investigate criminal activity.

Notably, some of the defendants in this case, along with their associates, have sent that same message to communities in the Middle District of Tennessee: Do not cooperate with the police. If you do cooperate, you will be disparaged, threatened, assaulted, or even killed. On the contrary, if you refuse to cooperate, you will be lionized for that refusal. Defendant Marcus Darden, for example, posted a composite photograph on his Facebook account, depicting drugs on a table with the caption, "You say u doin this"; a bag of cash, with the caption, "Getting it like this"; a person being arrested, with the caption, "But when this happens"; and a person pointing a finger from a witness stand, with the caption, "You do this!!" (*see* Exhibit A). That post, in addition, is captioned, "If this ain't the truth . . ." Defendant Darden also posted a photograph on his Facebook page of defendant Burks flashing a Gangster Disciples sign during a visit between Darden and Burks while Burks was incarcerated in Kentucky in connection with his prior federal case. Darden captioned the photograph, "Just left the jail talking to my young nigga. He told me it want [sic] b long. They can't keep a real G forever. He ask me to stay out u sucker way. Cause

niggas ain't playing free. Niggas telling" (*see* Exhibit B). Defendant Brandon Hardison a/k/a "Creep," who is charged with multiple counts of murder in aid of racketeering and with the murder of a witness, and who has numerous tattoos on his face evincing his gang affiliation, posted a picture of himself on his Instagram account with the caption, "Got my weight up not my hate up pay um back when I'm bigga! Bitch I'm out chea! Fuck da feds! Niggas say I was snitches can't say shit I'm my face niggas know I'm bout dat!" (*see* Exhibit C). To the same account, Hardison posted a photograph of himself pretending to point a gun at the camera (*see id.*). Defendant Derrick Kilgore a/k/a "Smut" posted a picture of a person who appears to be defendant Rex Whitlock a/k/a "Stackhouse" on Kilgore's Instagram account while Whitlock was incarcerated with the caption, "Think it's a game Tha count down begins Free my Daddy Real niggas don't talk they let they cake talk 💯💯 😎✔️🔪💰💲💰💰🔞🔞🎬🏚️" (*see* Exhibit D). Defendant Whitlock, who is also charged with murder in aid of racketeering, broadcasted the same sentiment while incarcerated in the United States Penitentiary in Atlanta, Georgia. After gaining access to cell phones that had been smuggled into the facility, Whitlock posted videos to Facebook depicting Whitlock, while incarcerated, displaying and describing his discovery materials, identifying government witnesses by name, and conducting a primer on how to determine whether a federal defendant is cooperating with the government. Defendant Whitlock also appears to have maintained an Instagram account while incarcerated, and to have posted a photograph of himself with his finger over his mouth and the caption, "Stop snitchin…" (*see* Exhibit E). And Louis Brooks a/k/a "Buc-G," a member of the Gangster Disciples who is presently charged in *United States v. Louis Brooks*, 3:18-cr-00046, and who has posted photographs of himself flashing gang signs with Darden and others on his social media accounts, posted, on one of his Instagram accounts, a photograph of himself with his hand

over his mouth bearing the caption, "You snitch . . . you die. Thats how im bred #lifestyle" (*see* Exhibit F).

Thus, not only is defendant Burks's description of this case as a "snitch case" inaccurate, it also reinforces the dangerous notion that those who seek to cooperate in any way with the government's efforts to investigate criminal activity should be discouraged from doing so or else risk retaliation.

B.     Legal Framework Governing Pretrial Disclosures

"[T]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *United States v. Bencs*, 28 F.3d 555 (6th Cir. 1994) (citation and quotation omitted). Rather, Rule 16 of the Federal Rules of Criminal Procedure identifies with particularity the information that is subject to pretrial disclosure in a federal criminal case. This information, which must be provided upon the request of the defendant, includes any statement made by a defendant to government agents in response to interrogation, assuming that the government intends to use that statement at trial; a defendant's criminal record; books, papers, documents, data, photographs, tangible objects, or buildings or places, or copies thereof, to the extent that (1) an item is material to a defendant's defense, that (2) the government intends to use the item in its case-in-chief at trial, or that (3) the item was obtained from or belonged to the defendant; the results or reports of any physical or mental examination and of any scientific test or experiment, if those results or reports are material to the preparation of the defendant's defense or the government intends to use them in its case-in-chief at trial; and a written summary of any expert testimony that the government intends to elicit during its case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(A)-(G). Rule 16, however, "provides no authority for compelling the pre-trial disclosure of *Brady* material

. . . or of any other evidence not specifically mentioned by the Rule." *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988).

Rules 16(a)(2) and (3), furthermore, specifically exempt three categories of information from pretrial disclosure. First, the Rule exempts "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," unless those "reports, memoranda, or other internal government documents" are discloseable under Rule 16(a)(1)(A)-(D), (F), and (G). Second, the Rule exempts "statements made by prospective government witnesses," except as provided in 18 U.S.C. § 3500 (commonly known as the Jencks Act). Finally, the Rule exempts "a grand jury's recorded proceedings," except under certain circumstances when the person making a statement that was recorded by the grand jury later testifies.

The Jencks Act itself is clear and unambiguous on the issue of pretrial disclosure. 18 U.S.C. § 3500(a) provides that:

> In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

After the witness has testified on direct examination at trial, the Court, on the defendant's request, shall order the government to produce the portion of such statement which relates to the subject matter as to which the witness has testified. 18 U.S.C. § 3500(b). In other words, a Jencks Act statement is not discloseable to the defense until after the conclusion of the direct examination at trial of the person whose statement it is.

It is "axiomatic," of course, that the government "is required to disclose material exculpatory evidence to a criminal defendant." *United States v. Davis*, 306 F.3d 398, 420 (6th Cir.

2002); *see also Bencs*, 28 F.3d at 560 ("*Brady* imposes on the government an obligation to turn over material that is both favorable to the defendant and material to guilt or punishment."). "Materiality" in this context "pertains to the issue of guilt or innocence, and not to the defendant's ability to prepare for trial." *Bencs*, 28 F.3d at 560. *Brady* further "requires that the prosecution disclose all exculpatory and impeachment evidence that is in the government's possession in time for use [by the defense] at trial." *United States v. Smith*, 749 F.3d 465, 491 (6th Cir. 2014) (citation and quotation omitted). "This obligation entails 'a duty to learn of any favorable evidence known to others acting *on the government's behalf* in the case." *Id.* (citation and quotation omitted). "*Brady* clearly does not impose an affirmative duty upon the government," however, "to take action to discover information which it does not possess." *Id.* (citation and quotation omitted); *see also Goff v. Bagley*, 601 F.3d 445, 476 (6th Cir. 2010) (citation and quotation omitted) ("*Brady* and its [progeny] do not impose a duty on the prosecutor's office to learn of information possessed by other government agencies that have no involvement in the investigation or prosecution at issue."); *United States v. Graham*, 484 F.3d 413, 415-18 (6th Cir. 2007) (rejecting defense claim that late-arriving information possessed by cooperating witness was imputed to government, holding that the government did not have sufficient control over the cooperating witness so as "to transform him into an agent of the prosecution.").

Notably, "[w]hen *Brady* material sought by a defendant is covered by the Jencks Act . . . the terms of that Act govern the timing of the government's disclosure." *Davis*, 306 F.3d at 420 (quoting *Bencs*, 28 F.3d at 561). In other words, where *Brady* material is contained (for example) in the grand jury testimony of someone whom the government calls as a witness at trial, the government is not obligated to disclose that *Brady* material until after the witness testifies on direct examination at trial. *Bencs*, 28 F.3d at 561; *United States v. Mullins*, 22 F.3d 1365, 1373 (6th Cir. 1994) ("[E]vidence properly disclosed after testimony at trial pursuant to the Jencks Act cannot be

8

subject to earlier disclosure on the basis of *Brady*.") (citing *Presser*, 844 F.2d at 1283); *accord United States v. Brazil*, 395 F. App'x 205, 215-16 (6th Cir. 2010). Nor can the government "be compelled to disclose impeachment material which would be covered by the Jencks Act relating to any potential government witnesses, whether it be a witness in the case-in-chief or a rebuttal witness." *Presser*, 844 F.2d at 1285. As the Sixth Circuit has explained, a rule to the contrary entitling the defense to "such a broad right of discovery would vitiate an important function of the Jencks Act," namely, "the protection of potential government witnesses from threats of harm or other intimidation before the witnesses testify at trial." *Id.*

Finally, there are important limitations on *Brady's* reach. "[T]here is no constitutional duty of a prosecutor," for example, "to disclose [to the defense] everything that might influence a jury." *United States v. Hanna*, 661 F.3d 271, 296 (6th Cir. 2011) (citing *United States v. Agurs*, 427 U.S. 97, 109 (1976)). Nor is the government, in cases involving large volumes of evidence, "obliged to sift fastidiously" through that evidence in order to "locate anything favorable to the defense." *United States v. Warshak*, 631 F.3d 266, 297-98 (6th Cir. 2010). Nor does "[a] defendant's right to discover exculpatory evidence . . . include the unsupervised authority to search through the [government's] files." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). Nor, finally, does the government's *Brady* obligation extend to all possible evidence in a criminal case. Instead, the *Brady* rule "applies only to evidence that is 'admissible at trial' or that would lead directly to admissible evidence." *United States v. Ogden*, 685 F.3d 600, 605 (6th Cir. 2012).

In sum, the government is required to produce, pretrial and upon a defendant's request, Rule 16 material. The government is also required to produce all exculpatory and impeachment evidence that is in the government's possession in time for the defense to make use of it at trial, including evidence known to others acting on the government's behalf in the case, other than

exculpatory and impeachment evidence that is contained in Jencks Act material. Of course, the government may also choose to disclose exculpatory and impeachment material earlier than the law requires, including what would otherwise be Jencks Act material, provided that the government complies with the secrecy requirements of the grand jury.

In this case, as the defendant concedes, the government has already disclosed "vast amounts of evidence," *see* Doc. 372 at 3 n.3. The government, moreover, also intends to disclose to the defense, to the extent that it has not done so already, all exculpatory and impeachment evidence that is in the government's possession in time for the defense to make use of it at trial. Those disclosures may include information contained in the Jencks Act statements of witnesses whom the government intends to call at trial, even though the government is not obligated to disclose such information until after the witness testifies on direct examination at trial. The government, lastly, intends to produce to the defense the Jencks Act statements of witnesses that the government intends to call at trial at least two weeks before the trial date, in order to avoid any delays of the trial in this case.

As noted, the defendant has requested that the Court order the government to produce a broad range of material in this case. The government addresses each request below.

C.     Defendant's Specific Requests

The defendant requests ("Request A") "[t]he exact date, time[,] and place that any informant was engaged by any federal or state agency, and the name(s) of the agency or agencies" (Doc. 372 at 11). The defendant is not entitled to this information. Nor has the defendant cited any authority justifying this request.

Next, the defendant requests ("Request B") "[a] full and complete statement of all promises, considerations, rewards, or inducements made by the Government, its prosecutors,

agents[,] or agencies to induce or encourage any individual's testimony, cooperation[,] or provision of information," in situations where the government has agreed, for example, to recommend leniency at sentencing or confer some other benefit on the individual (Doc. 372 at 11-12). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. *See United States v. Mullins,* 22 F.3d 1365, 1372 (6th Cir. 1994) ("We find no authority . . . that the government must disclose promises of immunity made to individuals the government does not have testify at trial."). To the extent to which such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant next requests ("Request C"):

Any evidence in the possession of the Government . . . tending to show that any individual who may be called as a government witness[] ha[s] given conflicting or contradictory statements regarding their involvement in this case, the involvement of Maurice Burks, and/or the involvement of any alleged associate, accomplice, co-conspirator, or co-defendant (Doc. 372 at 12-13).

The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request D") "[t]he full record of any arrests, pending cases, and criminal convictions—including juvenile arrests and convictions—of any individual who may be called as a government witness[] at trial, including any alleged victims, accomplices, witnesses,

or unindicted co-conspirators" (Doc. 372 at 13). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. *See United States v. Conder*, 423 F.2d 904, 910 (6th Cir. 1970) ("[T]he . . . criminal records of government witnesses are not discoverable under Rule 16(b)."). To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

The disclosure of juvenile adjudications, moreover, is limited by Federal Rule of Evidence 609(d), which permits the use of such adjudications to impeach testifying witnesses only insofar as "admitting [such] evidence is necessary to fairly determine guilt or innocence." Thus, even if such adjudications exist for witnesses that the government intends to call at trial, defendant Burks will need to establish that this evidence is "necessary to fairly determine guilt or innocence" before he could use these adjudications for purposes of impeachment.

Next, the defendant requests ("Request E") "[a]ny evidence or records o[f] any suspected wrongdoing or ongoing investigations in this or any other jurisdiction (state or federal) of any individual who may be called as a government witness at trial" (Doc. 372 at 13). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. *See United States v. Taylor*, 471 F. App'x 499, 520 (6th Cir. 2012) ("[A]sking the government to convey every undocumented negative opinion about its testifying officers would stretch the Brady requirement beyond what is practicable."). To the extent to which such impeachment material exists, and is in the government's possession, the government intends to

produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request F") "[i]nformation tending to show that any informant, witness, confidential source[,] or cooperating individual suffers from any material defect in perception, memory, veracity, or articulation" (Doc. 372 at 13-14). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request G") a "list of all persons (and their counsel) who were asked by the Government or its representative whether they or their client would and/or could implicate Maurice Burks in any wrongdoing" (Doc. 372 at 14). The defendant is not entitled to this information. Nor has the defendant cited any authority justifying this request.

Next, the defendant requests ("Request H") "[a]ny evidence in the possession of the Government that would tend to prove or reveal a bias or motive of any individual that the Government may call as a witness at trial" (Doc. 372 at 14). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such information exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request I") "[a]ny evidence which may be used to impeach a witness at the trial in this case, particularly, but not exclusively, inconsistent statements of a

13

witness or between witnesses" (Doc. 372 at 14). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request J") "[a]ny evidence of polygraph or 'lie detector' tests administered to any individual who the Government may call as a witness at trial, and the results of any such tests, including evidence regarding the refusal of any such individual to take any requested polygraph or 'lie detector' test," as well as a litany of information regarding such tests (Doc. 372 at 14). The defendant is not entitled to this information. *See United States v. Gardiner*, 463 F.3d 445, 468-69 (6th Cir. 2006) (citation and quotation omitted) ("[T]he Supreme Court has held that a prosecutor has no constitutional duty even to *disclose* to a criminal defendant the fact that a witness has 'failed' a polygraph test.'").

Next, the defendant requests ("Request K") "[a]ny evidence of psychiatric hospitalization, psychiatric treatment, or mental disease or defect or physical disorder of any individual who the Government may call as a witness at trial" (Doc. 372 at 15). The defendant also asks that, to the extent that "any such medical or hospital records exist," the government provide the defendant with "the source and locations of such records" (*Id.*). And the defendant asks that, to the extent that such records do not exist, but that "others" have nevertheless "observed" "such disease, defect, or disorder," the government provide the defendant with the "names and addresses of such persons" (*Id.*).

The defendant is not entitled to "evidence of psychiatric hospitalization, psychiatric treatment, or mental disease or defect or physical disorder[s]," to "the source and locations of such

records," or to the observations of others regarding any such disease, defect, or disorder, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the government's possession, and subject to any legal limitations placed upon the dissemination or use of such materials in a criminal case, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request L"):

Notice, including date, amount and method (cash or check) and purpose of any monies paid to any potential witness, operative, or informant of the government in return for information, their services, or as a reward and/or for the purported payment of expenses and/or for any purported obligation of any such potential witness or informant, whether specifically related to this case or not (Doc. 372 at 16).

The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the government's possession, the government intends to produce relevant information in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request M"):

Any writings, canceled checks, receipts, vouchers, or other documents generated as a result of any promises, statements, agreements, understandings, or arrangements by which any of the [payments to informants] were provided to the person, or by which records were kept of such by the Government, whether specifically related to this case or not (Doc. 372 at 16).

The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the

government's possession, the government intends to produce relevant information in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request N"):

> Any and all threats of prosecution or any statements regarding the magnitude of penal liability made to any individual who the Government may call at trial, or any witness called before a federal grand jury, by any agent or employee of the federal government or by any state law enforcement or prosecutorial agency working or cooperating with the government (Doc. 372 at 16).

The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request O") "[a]ny evidence of past or present drug or alcohol ingestion or dependency by any individual who the Government may call at trial," the "source and location of such records," and, if "no such records exist" but "ingestion or dependency has been witnessed by others," the "names and addresses of such persons" (Doc. 372 at 16-17). The defendant is not entitled to "evidence of past or present drug or alcohol ingestion or dependency," to the "source and location of such records," or to the observations of others regarding such evidence, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

16

Next, the defendant requests ("Request P"):

> Any evidence in the possession of the Government, the existence of which is known or by the exercise of due diligence may become known to the government which would tend to show that any of the alleged participants in the indictment were participants in separate conspiracies, organizations, enterprises, or criminal activities not charged in the indictment and not involving Maurice Burks (Doc. 372 at 17).

To the extent the defendant was a member of a gang, was part of a criminal conspiracy, or was engaged in organized criminal activity, and such information is in the government's possession, the government intends to produce that information in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request Q"):

> Any and all evidence in the possession of the Government, the existence of which is known, or by the exercise of due diligence may become known to the government, which would tend to show that any alleged victim, co-defendant, co-conspirator (indicted or unindicted), aider and abettor, associate, or any other individual alleged by the Government to have been in an offense with Maurice Burks, transported, produced, distributed, sold, transferred, delivered[,] or possessed any controlled substance (Doc. 372 at 17).

The defendant is not entitled to this information. *See United States v. Vujovic*, 635 F. App'x 265, 269 (6th Cir. 2015) (rejecting claim that government violated *Brady* by failing to disclose that other persons may have been bribing loan officer to whom defendant submitted false loan application, where evidence was "only useful to show that others were guilty of separate criminal acts," not that the defendant was innocent). Nor has the defendant cited any authority justifying his request.

Next, the defendant requests ("Request R") "[a]ny and all evidence that tends to show that someone other than Maurice Burks committed the murder of which he has been accused" (Doc. 372 at 17-18). To the extent such information exists, and is in the government's possession, the

17

government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request S") "[a]ny and all evidence that tends to show that someone other than Maurice Burks may have had a motive to kill Malcolm Wright" (Doc. 372 at 18). To the extent such information exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request T") "[a]ny and all evidence relating to any other suspect in the murder of Malcolm Wright" (Doc. 372 at 18). The defendant is not entitled to this information. *See Apanovitch v. Houk*, 466 F.3d 460, 484 (6th Cir. 2006) (information about other murder suspects that "does not even indirectly link any of the suspects to the murder" need not have been disclosed and was "simply too remote to have been exculpatory or to undermine confidence in the verdict"). Nor has defendant cited any authority justifying his request.

Next, the defendant requests ("Request U") "[a]ny and all evidence relating to any other theory for the murder of Malcolm Wright that does not relate to Maurice Burks" (Doc. 372 at 19). The defendant is not entitled to this information. Nor has the defendant cited any authority justifying his request.

Next, the defendant requests ("Request V") "[a]ny and all evidence that calls into question the quality of the investigation performed with respect to the murder of Malcolm Wright" (Doc. 372 at 19). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the

government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request W") "[a]ny and all evidence that calls into question the motivation of any individual who investigated the murder of Malcolm Wright" (Doc. 372 at 19). The defendant is not entitled to this information. Nor has the defendant cited any authority justifying his request.

Next, the defendant requests ("Request X") "any and all information contained in any file designated by the FBI or DEA as [a] 'subfile' including, but not limited to[,] FD 302s and DEA 6s in which the identity of the informant is concealed, inserts that conceal the identity of the informant, and annual letters" (Doc. 372 at 19). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request Y") "a copy of any supervisor's informant file review log or its equivalent, with respect to any informant utilized in the investigation of this case" (Doc. 372 at 19). The defendant is not entitled to this information. Nor has the defendant cited any authority justifying his request.

Next, the defendant requests ("Request Z") "[c]opies of any and all teletypes or faxes furnished to the FBI HQ, DEA HQ[,] or any other governmental agency requesting lump-sum payments to any informants and the approval for such payments with respect to any informant utilized in the investigation of this case" (Doc. 372 at 19). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and

constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the government's possession, the government intends to produce relevant information in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request AA") "all materials [related to informants] contained in the 'main files' of the FBI, including but not limited to what is commonly referred to as the 'I drive,' DEA[,] or other government agencies" (Doc. 372 at 20). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant asks that the Court order the government to notify him ("Request BB") "[w]hether any informant has testified or is expected to testify in connection with this case, and any proposal to pay the informant for such testimony or pay the purported expenses of the informant, and the nature of any discussions with the U.S. Attorney" (Doc. 372 at 20). The defendant is not entitled to know at this time whether informants have testified or are expected to testify in connection with this case. The government, furthermore, does not intend to pay any informants in exchange for their testimony in this case. To the extent the government pays the expenses of an informant in connection with his or her testimony, i.e., to the extent the government pays the informant's travel or lodging expenses, the defendant is not entitled to that information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. To the extent such impeachment

material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request CC") "[c]opies of all federal tax returns of any informant utilized in this case filed during the course of the investigation and until the time of trial" (Doc. 372 at 20). The defendant is not entitled to this information. *See United States v. Lochmondy*, 890 F.2d 817, 823-24 (6th Cir. 1989) (where prosecutor did not have a witness's tax return, *Brady* did not apply, and 26 U.S.C. §§ 6103, *et seq.* did not authorize district court to direct IRS to disclose tax information to defense). Nor has defendant cited any authority justifying his request.

Next, the defendant requests ("Request DD") "[a]ll receipts signed by prospective government witnesses or informants utilized in this case" (Doc. 372 at 20). The defendant is not entitled to this information. Nor has the defendant cited any authority justifying his request.

Next, the defendant requests ("Request EE") "[a]ny and all, representations made to informants concerning the potential of reward or payment for information including fees or payments, which may be earned from forfeited assets or collected fines" (Doc. 372 at 20). The defendant is not entitled to this information. Nor has he cited any authority justifying his request.

Next, the defendant asks that the Court order the government notify him ("Request FF") as to "[w]hether any informant utilized in this case has previously been used as an informant and/or witness by any federal or state agency or in any federal or state prosecution" (Doc. 372 at 20-21). The defendant asks further that, if an informant has been so used, the Court order the government to notify him regarding the agencies for which the defendant served as an informant, the dates when such relationship existed, the length of such relationship, the dates when and places where the informant testified, and the payments that the informant received for services and expenses (*Id.*). The defendant is not entitled to this information, except to the extent to which such

21

information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. *See United States v. Miller*, 698 F.3d 699, 704 (8th Cir. 2012) (affirming district court's denial of a defense request for "case names and numbers of any trials or evidentiary hearings at which any cooperating witness has testified"). To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request GG") "[a]ny and all documentation detailing or setting forth the accomplishments by informants utilized in this case" (Doc. 372 at 21). The defendant is not entitled to this information. Nor has defendant cited any authority justifying his request.

Next, the defendant requests ("Request HH") the "date(s) on which all persons who were informants utilized in this case were 'opened' or 'closed' as informants" (Doc. 372 at 21). The defendant is not entitled to this information. Nor has he cited any authority justifying his request.

Next, the defendant asks that the Court order the government to notify him ("Request II") as to "[w]hether any persons are currently opened as informants" (Doc. 372 at 21). The defendant is not entitled to this information. Nor has defendant cited any authority justifying his request.

Next, the defendant requests ("Request JJ") "[c]opies of all instructions required to be given to an informant used on a continuing basis"; to "any informant authorized to associate in activities, participation in which otherwise would be involvement in unauthorized past or continuing criminal activities"; and to "any informant or confidential source providing substantial operational assistance in an undercover operation" (Doc. 372 at 21). The defendant is not entitled to this information. Nor has he cited any authority justifying his request.

Next, the defendant requests ("Request KK") a "copy of the written record in any informant's or confidential source's file of the instructions given" (Doc. 372 at 21). The defendant is not entitled to this information. Nor has he cited any authority justifying his request.

Next, the defendant requests ("Request LL") "[a]ny authorization or approval for any informant or confidential source to engage in any activity that would constitute a crime under state or federal law if engaged in by a private person," as well as "the written findings by supervisory officials that such conduct is necessary to obtain information or evidence and that the need outweighs the seriousness of the conduct involved" (Doc. 372 at 21). The defendant is not entitled to this information. Nor has he cited any authority justifying his request.

Next, the defendant requests ("Request MM") "[c]opies of pretrial services reports on any informant or confidential source prepared for any informant or confidential source who has been arrested for a federal offense" (Doc. 372 at 21). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the government calls at trial. Notably, pretrial services reports which have been prepared by a court or probation office but which have not yet been delivered to the prosecution are not in the "government's possession" for *Brady* purposes. *United States v. Sherlin*, 67 F.3d 1208, 1218 (6th Cir. 1995). To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Next, the defendant requests ("Request NN") "[c]opies of presentence reports prepared on any informant or confidential source for any federal conviction or plea of guilty" (Doc. 372 at 22). The defendant is not entitled to this information, except to the extent to which such information is in the government's possession and constitutes impeachment material for witnesses the

government calls at trial. Notably, presentence reports which have been prepared by a court or probation office but which have not yet been delivered to the prosecution are not in the "government's possession" for *Brady* purposes. *Sherlin*, 67 F.3d at 1218. To the extent such impeachment material exists, and is in the government's possession, the government intends to produce it in time for the defendant's use at trial, subject to the limitations under Rule 16 and the Jencks Act.

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney

By:     */s/ Ben Schrader*
        BEN SCHRADER
        Assistant United States Attorney
        Middle District of Tennessee

DAVID L. JAFFE
Acting Chief, Organized Crime and Gang Section
Criminal Division, U.S. Department of Justice

By:     */s/ Ivana Nizich*
        IVANA NIZICH
        Trial Attorney, Organized Crime and Gang Section
        Criminal Division, U.S. Department of Justice

Dated:          April 25, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2018, I sent a copy of the foregoing via the Court's electronic filing system to counsel for the defendant.

*s/ Ben Schrader*
BEN SCHRADER
Assistant United States Attorney